# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER DALE GRAVES,

    Plaintiff,

  vs.

KAREN TODD, et al.,

    Defendants.

No. CIV S-07-0666-KJM-CMK-P

SUPPLEMENTAL[1] FINDINGS AND RECOMMENDATIONS

_____/

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are: (1) motion for summary judgment by defendant Wilson (Doc. 54); (2) motion for summary judgment by defendants Sattah and Song (Doc. 55); (3) motion for summary judgment by defendant Whitney (Doc. 67); and (4) motion for summary judgment by defendants Todd, Martinez, and Hashimoto (Doc. 197).

---

[1] The undersigned issued the original findings and recommendations on March 2, 2011. The District Judge declined to adopt the findings and recommendations on September 30, 2011, and referred the case back to the undersigned for resolution of plaintiff's request to depose Dr. Allen as an expert witness. The undersigned has resolved that discovery issue by separate order. As the discovery issue has been resolved, and has no bearing on the motions for summary judgment, or the undersigned's findings or recommendation to grant the same, the findings and recommendations are reissued here without material alteration.

1

## I. BACKGROUND

This action proceeds on plaintiff's original complaint. On May 8, 2007, the court issued an order finding that service was appropriate as to defendants Todd, Martinez, Hashimoto, Sattah, Mallat, Song, Wilson, and Whitney. Defendant Mallat was dismissed on June 16, 2008. All remaining defendants have appeared.

### A. Plaintiff's Allegations

Plaintiff states that he broke his finger on July 16, 2006. Plaintiff was later transported to Doctor's Hospital in Manteca, California, on July 18, 2006. According to plaintiff, defendants Sattah and Song – both doctors at Doctor's Hospital – rendered diagnoses without ever examining plaintiff's finger. Plaintiff states that, between July 19, 2006, and August 8, 2006, he was repeatedly told by defendants Todd, Martinez, and Hashimoto – all alleged to be prison medical staff – that his finger was not broken but merely badly sprained. Plaintiff states that he made repeated requests to see a doctor for pain medication and that, on August 21, 2006, he was seen by defendant Hashimoto who told plaintiff that he had a "cracked bone."

### B. The Parties' Evidence

#### 1. Defendants' Evidence

Defendants have submitted separate statements of undisputed fact in support of their various motions for summary judgment. The statements of undisputed fact are supported by defendants' declarations with attached exhibits, as well as expert declarations (in support of the summary judgment motions filed by defendants Whitney, Weaver, Sattah, and Song). The evidence is summarized below.

Defendants Hashimoto, Todd, and Martinez

- On July 16, 2006, plaintiff fell on his left elbow and left hand while playing basketball and was provided Motrin and instructed to return to the medical clinic the next morning.

///

- At all relevant times, Hashimoto was a doctor employed by the California Department of Corrections and Rehabilitation ("CDCR"), Todd was a physician's assistant employed by the CDCR, and Martinez was a licensed registered nurse employed by the CDCR.

- Todd treated plaintiff on July 17, 2006. She applied a dressing to plaintiff's fourth and fifth fingers on the left hand and also applied a sling. Because no x-ray facilities were available at the prison, Todd planned to have plaintiff transported to an outside hospital for x-rays to rule out left elbow fracture and avulsion fracture of the fifth middle finger.

- Plaintiff was transported to Doctor's Hospital where x-rays were obtained on July 18, 2006. The emergency room clinician interpreted the x-rays as being within normal limits without fracture or abnormal alignment. The clinician's assessment was contusion of the left elbow and sprain of the left fifth finger. Plaintiff's left fifth finger was taped, his elbow was placed in a sling, and he was returned to the prison that same day.

- Hashimoto was the physician on call when plaintiff returned to the prison on July 18, 2006. Upon plaintiff's return, Hashimoto prescribed Naprosyn 500 mg as needed for pain.

- Plaintiff was seen by Todd for follow-up care on August 7, 2006. Todd ordered new x-rays and provided plaintiff an additional prescription for Naprosyn for pain.

- A second set of x-rays was obtained on August 8, 2006. These x-rays showed a fracture of the left fifth finger (specifically, a fracture of the proximal phalanx distal portion extending into the articular margin).

- On August 9, 2006, Hashimoto ordered an urgent orthopedic consultation. The scheduling of the consultation was not, however, within Hashimoto's control.

- On August 21, 2006, plaintiff was seen by Martinez for follow-up care. At that time, plaintiff complained of pain in his left hand and left elbow, which had developed a water pocket. Martinez noted that plaintiff's orthopedic consultation had been referred to "Telemed," but that no appointment had been scheduled. Martinez wrapped plaintiff's finger per instructions from Hashimoto.

- On September 11, 2006, plaintiff was seen by Todd for follow-up care. Todd noted that plaintiff's referral had been completed, though she states that she had no control over scheduling.

- Todd saw plaintiff again for follow-up care on October 11, 2006. She informed plaintiff that his orthopedic consultation had been approved and scheduled for October 26, 2006.[2]

///

---

[2] That consultation actually occurred on November 9, 2006, when plaintiff was transported to Tuolumne General Hospital and examined by defendant Whitney.

- Hashimoto states that, in his professional opinion, plaintiff was provided all reasonably necessary medical care consistent with the standards in the medical community. Hashimoto, Todd, and Martinez each state that at no time did they intentionally or knowingly deny or delay medical treatment.

Defendants Sattah and Song

- Sattah is a radiologist at Doctor's Hospital, where plaintiff was taken on July 18, 2006. On July 19, 2006, Sattah dictated his formal interpretation of the July 18, 2006, x-rays. The doctor noted normal bony mineralization without acute fracture, subluxation, or erosive changes. The doctor did, however, report a tiny foreign body in the soft tissue of the proximal fourth digit.

- Sattah's report was "administratively authenticated" by Song, another doctor at Doctor's Hospital, on July 20, 2006. An "administrative authentication" is merely a check for correct spelling and grammar and does not involve comparing the report with the original x-ray films. Song's only involvement was to perform the administrative authentication.

- According to expert witness George M. Khoury, M.D., the July 18, 2006, x-rays were properly interpreted by Sattah, and Song performed properly and within community standards with respect to the administrative authentication.

Defendant Whitney

- Whitney, an orthopedic surgeon at Tuolumne General Hospital at all relevant times, treated plaintiff on November 9, 2006. On examination of plaintiff's injured finger, the doctor noted mild swelling around the proximal interphalangeal ("PIP") joint. He also noted that the finger was very stiff at all joints.

- Whitney ordered new x-rays, which showed a defect on the ulnar aspect of the distal proximal phalanx. Whitney's impression was that there was injury to the proximal interphalangeal joint of the left small finger as well as post-traumatic arthrofibrosis.

- Whitney did not feel plaintiff required surgery. Instead, he recommended an aggressive physical therapy program.

- According to expert witness James Lilla, M.D., Whitney's treatment and care was within the standard of care for physicians practicing under similar circumstances.

Defendant Wilson

- Additional x-rays of plaintiff's left fifth finger were taken on November 9, 2006, and interpreted by Wilson, a medical doctor, on November 13, 2006.

/ / /

• Wilson noted juxta articular cortical erosive changes, but no definite associated fracture fragment was identified. Wilson's impression was that the November 9, 2006, x-rays revealed post-traumatic degenerative changes around the left fifth proximal interphalangeal joint with associated irregular joint space narrowing.

• According to expert witness Michael H. Reid, M.D., Wilson's interpretation of the x-rays was consistent with the standard of care for practicing radiologists under similar circumstances.

2.     Plaintiff's Evidence

Plaintiff states that the following are in dispute:

• Whether he was provided Motrin following the July 16, 2006, injury.

• Whether he received medical treatment on July 17, 2006.

• Whether he was prescribed Naprosyn on July 18, 2006, for pain or swelling.

• Whether he received a physical examination on July 18, 2006.

• Whether his injured finger was taped on July 18, 2006.

• Whether x-rays taken on July 18, 2006, show that his injured finger was within normal limits without fracture or abnormal alignment.

• Whether the July 18, 2006, x-rays revealed anything that would require further studies.

• Whether he received follow-up care on August 7, 2006.

• Whether Hashimoto requested an urgent orthopedic consultation on August 9, 2006.

• Whether he received follow-up care from Martinez on August 21, 2006.

• Whether Martinez denied him access to a doctor.

• Whether, on September 11, 2006, Todd confirmed an outside consultation for October 26, 2006.

• Whether Hashimoto's order for an urgent consultation was processed in a timely fashion.

• Whether Todd, Martinez, and/or Hashimoto acted knowing their conduct would cause plaintiff pain.

• Whether a diagnostic radiologist is required to conduct a physical examination before reviewing x-rays and rendering opinions.

5

1    In support of his statements of disputed material facts and oppositions to
2 defendants' motions, plaintiff submits his own declarations with attached exhibits as well as a
3 request for judicial notice. In his request for judicial notice, plaintiff asks the court to take notice
4 of four attached medical reports as follows:

5    • Report of Dr. Eddie Lo, dated December 27, 2007. The report states:

6    HISTORY OF PRESENT ILLNESS: Mr. Graves is a 47-year-old man who jammed his finger approximately 17 months ago, sustained a dislocation with loss of ulnar condyle at the proximal phalanx and loss of volar lip of the base of his middle phalanx. He is currently a week status post left small finger hemi-hamate arthroplasty. He is currently doing well with some stiffness and pain. His left small finger PIP joint.

10   PHYSICAL EXAM: The patient is tender to palpation over the small finger PIP joint. His range of motion is zero to 55 degrees on the PIP. We took him out of the splint, and he had sutures intact on his wound which is not ready to be removed.

13   ASSESSMENT AND PLAN: This is a 47-year-old man status post left small finger hemi-hamate arthroplasty. We will leave his sutures in and have him follow up with us in one week for suture removal and wound check. In addition, we will put the patient in a dorsal block splint for about a month. He should continue general active range of motion of the small finger in the splint, and he should not work for another month until further evaluation. We will give him a prescription for Norco [for pain].

17   • Radiology report of Dr. Michael T. Lam, dated December 27, 2007. The report states:

19   The left hand is seen through a plaster cast which obscures bone detail. Interval placement of 3 screws in the little finger proximal interphalangeal joint and radial aspect of the middle phalangeal base consistent with the given history of arthroplasty. On the lateral view, irregularity of the dorsal carpus at the level of the hamate may represent post surgical change.

22   • Report of Dr. Jonathan Eastman, dated January 14, 2008. In this report, Dr. Eastman details plaintiff's recovery from the finger surgery.

24   • Radiology report of Dr. H. Walter Pepper dated January 25, 2008.

25 / / /
26 / / /

6

Defendants have filed objections to plaintiffs' evidence. Defendants Sattah and Song object to portions of plaintiff's declarations which purport to offer expert opinion. Defendants Hashimoto, Todd, and Martinez, similarly object. Defendant Whitney objects to plaintiff's Exhibit C, which he argues is hearsay and lacks foundation.[3]

## II.  STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

---

[3] Plaintiff has submitted two separate declarations in opposition to summary judgment. Attached to his March 13, 2008, declaration as Exhibit C is a July 18, 2006, "Emergency Physician Record" prepared at Doctor's Hospital. The document is not signed or otherwise authenticated. Attached to plaintiff's December 16, 2009, declaration as Exhibit C is a radiology report dated August 8, 2006, showing "[f]racture left fifth digit proximal phalanx distal portion which extends into the articular margin. No displacement is seen. The document is signed by H. Walter Pepper, M.D., but is not authenticated.

7

facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed

before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

Plaintiff's claim against the various defendants is based on his contention that he received constitutionally inadequate medical care.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants raise the following arguments in their motions for summary judgment: (1) Hashimoto, Todd, Martinez, and Whitney – who are examining/treating medical professionals – argue that plaintiff cannot establish their deliberate indifference to any serious medical need and that plaintiff's claim against them amounts to a dispute based on plaintiff's dissatisfaction with the treatment provided or a claim of medical malpractice, neither of which states a claim to relief under § 1983; and (2) Wilson, Sattah, and Song – who are radiologists – argue that plaintiff cannot establish that their interpretation of x-ray studies was based on a deliberate desire to cause harm to plaintiff and not their application of appropriate medical standards.

### A. Examining/Treating Doctors

Defendants Hashimoto, Todd, and Martinez argue:

> Defendants are entitled to summary judgment as there is no evidence that they consciously or deliberately ignored or refused plaintiff any necessary medical treatment. The undisputed evidence is that:
> Defendants' treatment of plaintiff was at all times within the community standard of care and consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of their profession under similar circumstances. Plaintiff can present no competent or admissible evidence that Defendants ever refused or denied him appropriate medical treatment or evaluation.
> What exists here, at worst, is a difference in medical opinion between a prisoner-patient and a healthcare provider in treatment options, which does not give rise to an Eighth Amendment claim. (citation omitted). Here, Plaintiff was seen, evaluated, and treated by Dr. Hashimoto, Karen Todd, P.A., and Kelly Martinez, R.N., for all of his complaints. The decisions regarding Plaintiff's medical treatment made by Defendants were all within the standard of care; therefore, summary judgment must be granted in their favor.

Defendant Whitney, the orthopedic specialist who examined plaintiff at Tuolumne General Hospital on November 9, 2006, advances essentially the same argument.

In opposition, plaintiff presents three theories. First, he argues that the doctors failed to conduct proper examinations which would reveal the true extent of his injury. Second, he contends that summary judgment is not appropriate because the evidence shows that, contrary to the doctors' initial assessments, his finger was in fact either fractured or broken. Third, he

11

argues that defendants are liable based on the delay in obtaining an outside orthopedic consultation. As will be discussed below, the court finds that, accepting all of plaintiff's evidence over defendants' objections, none of the theories advanced by plaintiff are sufficient to defeat summary judgment in favor of the examining/treating defendants.

Turning to plaintiff's first theory – that the doctors' evaluations and examinations were inadequate and failed to meet professional standards of care – the record is clear that plaintiff was in fact seen by defendants Hashimoto, Todd, and Martinez on various occasions following the July 16, 2006, injury. The excerpts from plaintiff's medical file which defendants attach to their motion clearly show that plaintiff was seen. Because defendants did not ignore plaintiff's complaints but, instead, gave him some treatment, it cannot be said that they were indifferent. To the extent plaintiff's evidence suggests that the treatment provided by Hashimoto, Todd, and/or Martinez was inadequate or failed to rise to the appropriate standard of care, plaintiff's case is necessarily based on ordinary professional negligence. Therefore, even accepting all of plaintiff's evidence over defendants' objections, the court finds that, while plaintiff may have a medical malpractice case, he cannot prevail under § 1983.

Turning to plaintiff's second theory – that the doctors misdiagnosed plaintiff's finger – any evidence supporting this theory shows, at best, plaintiff's difference of opinion or possible malpractice. As to the former, plaintiff is not qualified to render a medical opinion. As to the latter, ordinary malpractice is not a basis for liability under § 1983.

Turning to plaintiff's third theory – that defendants are liable due to the delay in obtaining an outside specialist consultation – there is no evidence whatsoever that any delay was intentionally caused by any defendant. Even if defendants were remiss in failing to ensure that the consultation occurred sooner, unless plaintiff can establish that the delay was intentional he cannot prevail. According to plaintiff, defendants ignored his "constant bantering about his finger being broken" and caused the infliction of unnecessary pain and suffering when he was forced to wait from July 16, 2006, until December 19, 2007, when he finally received surgery.

As to plaintiff's contention that his complaints of a broken finger were ignored, the evidence indicates that defendants believed initially that plaintiff had not broken or fractured his finger. This belief was reasonably based on the July 18, 2006, x-rays which showed no fracture.[4] Therefore, defendants had a legitimate reason to "ignore" complaints of a broken finger because, based on their initial assessments, plaintiff's finger was not broken or fractured but sprained.

As to being made to wait for an outside consultation, the evidence indicates that plaintiff was seen for follow-up care by defendant Todd on August 7, 2006, and that a second set of x-rays was obtained the following day. Based on the new x-ray evidence, defendant Hashimoto authorized an urgent outside consultation. Plaintiff was seen on August 21, 2006, by defendant Martinez. By this time, the outside consultation order had been authorized and an appointment had yet to be scheduled. Plaintiff was seen again in the medical clinic on September 11, 2006, and October 11, 2006, and obtained an outside consultation in November 2006. This timeline simply does not suggest that defendants intentionally caused any delay in treatment.

In opposition, plaintiff disputes that he was provided meaningful follow-up treatment between July and November 2006. The undisputed evidence, however, shows that plaintiff was indeed seen in the medical clinic several times during this time period. As discussed above, disagreement over the quality of the care provided during those visits does not form a basis for § 1983 liability.

**B.     Radiologists**

Defendant Wilson, a doctor who interpreted plaintiff's x-ray images, argues that plaintiff cannot prevail against him because expert evidence indicates that his interpretation of the x-rays was appropriate. Defendant Wilson concludes that he is entitled to summary judgment because plaintiff has not presented any evidence that the doctor's analysis of the November 9, 2006, x-rays was the result of a deliberate desire to harm plaintiff. Defendants Sattah and Song,

---

[4] Plaintiff's claim against the radiologists who interpreted the July 18, 2006, x-rays – defendants Sattah and Song – is discussed below in section III.B.

doctors at Doctor's Hospital who also reviewed x-ray images, make essentially the same argument with respect to their analysis of x-rays taken on July 18, 2006.

The essence of plaintiff's claims against the radiologist defendants is that they misread the various x-ray films and, as a result, plaintiff suffered continued pain and sustained further injury to his finger. Even accepting as true all of plaintiff's evidence which he states indicates that the defendants misread the films, such evidence would, at best, indicate a claim for medical malpractice. Moreover, defendants' evidence indicates that they did, in fact, act within the appropriate standard of care. Specifically, defendants Sattah, Song, and Wilson provide expert declarations to this effect and plaintiff has not provided any competent expert evidence to dispute the experts' opinions (and plaintiff is not himself qualified to dispute expert opinions).

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motions for summary judgment (Docs. 54, 55, 67, and 197) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 17, 2012

                                         /s/ Craig M. Kellison
                                         **CRAIG M. KELLISON**
                                         UNITED STATES MAGISTRATE JUDGE